An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1161

Filed 15 July 2026

Stokes County, No. 25CVD000342-840

KATHY BLACKBURN NELSON, Plaintiff,

v.

JEAN BYRD YEATTS, Defendant.

Appeal by Defendant from order entered 22 May 2025 by Judge Thomas B. Langan in Stokes County District Court. Heard in the Court of Appeals 2 June 2026.

*No brief filed for Plaintiff-Appellee.*

*Bell, Davis & Pitt, P.A., by Ashley DiMuzio Froeschle and Carson D. Schneider, for Defendant-Appellant.*

GRIFFIN, Judge.

Defendant Jean Yeatts appeals from the trial court's civil no-contact order. Defendant argues that competent evidence does not support the trial court's findings of fact and that those findings, if upheld, are not sufficient to support the entry of a no-contact order. We hold there was competent evidence to support the entry of a no-contact order under Chapter 50C. We affirm the trial court's no-contact order.

## I.    Factual and Procedural Background

Defendant and Plaintiff have been next-door neighbors for over thirty-six years. On 6 May 2025, Defendant met with the city engineer about a "sight obstruction," Plaintiff's holly bush, at the end of her driveway. Plaintiff received a call that Defendant was looking at Plaintiff's property and went down to the natural area next to Defendant's mailbox. Plaintiff threw contents from her yard onto Defendant's property. Plaintiff contends the contents were pine needles and leaves that were originally from Defendant's yard; Defendant contends the contents were maple leaves and trash that were not originally from her yard.

Defendant exited her home and approached Plaintiff, but the happenings of the confrontation were disputed by the parties. Plaintiff contended that Defendant approached "running her mouth," but that Plaintiff "sa[id] nothing" and instead returned home after a few moments.

Plaintiff's witness and neighbor, Cynthia Austin, contended Defendant came running "with a camera, taking [Plaintiff's] picture." Ms. Austin asserted that, while Defendant did not say a word, Defendant "admitted . . . that the streetlight that she has records and has audio." Moreover, Ms. Austin contended Defendant was "within 12 feet" of Plaintiff's face and Plaintiff could not move because Defendant was "right there on her." Finally, Defendant contended that, when Defendant approached, Plaintiff picked up another pile of "stuff" to throw, and Defendant only spoke to advise Plaintiff against picking up the pile because she thought "there[ was] poop in it."

Then, Defendant contended that Plaintiff called her a "bitch" and "stormed off" to her house.

On 12 May 2025, Plaintiff filed a complaint seeking a no-contact order against Defendant after the 6 May altercation. Later on 12 May, the trial court held an *ex parte* hearing to determine whether to issue a temporary no-contact order. The trial court denied the temporary order. Defendant filed her Answer on 20 May 2025.

At the 22 May 2025 return hearing, Plaintiff called three witnesses and entered no exhibits into evidence. Defendant called one witness and entered no exhibits into evidence. Plaintiff claimed Defendant was "harassing and stalking" her, and Plaintiff was concerned for her family's safety.

In addition to the events on 6 May, Plaintiff and her witnesses testified to other incidents between the parties. Plaintiff, when asked if she feared for her safety, cited an instance on 11 April 2024 when Defendant "picked up hands full of mulch and thr[ew] over her fence on [Plaintiff]." Plaintiff also recalled an incident from "back around 2000," when Defendant recorded a survey of Plaintiff's property, which prompted Plaintiff to erect a second fence of ten or twelve feet in height. Ms. Austin contended that Defendant would throw objects, such as cat food cans, pieces of glass, and pieces of brush with feces and urine, over the fence. Finally, Plaintiff's witness and husband, Kenneth Nelson, asserted that the conduct had "been going on for years and years, and something needs to be done." When asked about Plaintiff's emotional distress, Mr. Nelson testified that "the suffering . . . it's just agonizing." Mr. Nelson

contended the distress caused Plaintiff "sleepless nights." He referenced the decades-long property dispute and over $10,000 of repairs done by Plaintiff in response to debris along the property line.

At the conclusion of the evidence, Judge Thomas Langan noted he had "only been dealing with [this case] for 25 years," but the dispute has been ongoing for thirty-six years. The trial court referenced a permanent injunction then in force against Plaintiff. After verbally granting the one-year no-contact order against Defendant, the trial court opined that if the parties both have orders against them, "there will be no contact, and there will be peace."

After the 22 May 2025 hearing, the trial court granted a no-contact order against Defendant for one year. The trial court, as indicated on the AOC-CV-524 form, found Plaintiff had suffered unlawful conduct committed by Defendant. Specifically, Defendant "on more than one occasion followed or otherwise harassed, as defined in G.S. 14-277.3A(b)(2), [P]laintiff, without legal purpose and with the intent to . . . cause [P]laintiff to suffer substantial emotional distress by placing [P]laintiff in fear of death, bodily injury, or continued harassment, and this in fact caused [P]laintiff substantial emotional distress." In a handwritten notation on the form, the trial court described the substantial emotional distress as "audio/video surveillance, hectoring [P]laintiff each time she leaves her home resulting in sleepless nights. May 6 2025." Defendant provided timely notice of appeal on 20 June 2025.

## II.    Analysis

While a pending appeal of a judgment that has been carried out is usually moot, "an appeal from a judgment which creates possible collateral legal consequences for the appellant is not moot." *In re A.K.*, 360 N.C. 449, 453, 628 S.E.2d 753, 755 (2006) (citation omitted). In this case, the one-year no-contact order expired on 22 May 2026. However, because the potential collateral consequences associated with a no-contact order for "stalking" may follow Defendant, this case should not be rendered moot. *See Williams v. Vonderau*, 362 N.C. 76, 77, 653 S.E.2d 144, 145 (2007). Although expired, this order is still reviewable on appeal.

For a non-jury trial, we review a trial court's order to determine whether competent evidence supports the trial court's finding of fact and whether those findings support the trial court's conclusions of law. *DiPrima v. Vann*, 277 N.C. App. 438, 442, 860 S.E.2d 290, 293 (2021); *Tyll v. Willets*, 229 N.C. App. 155, 158, 748 S.E.2d 329, 331 (2013) (citation omitted). We review conclusions of law de novo. *Tyll*, 229 N.C. App. at 158, 748 S.E.2d at 331.

A civil no-contact order action can be commenced by a "person who is a victim of unlawful conduct that occurs in" North Carolina. N.C. Gen. Stat. § 50C-2(a)(1) (2025). Unlawful conduct includes both instances of nonconsensual sexual conduct and stalking. N.C. Gen. Stat. § 50C-1(7)(a)-(b) (2025). Stalking exists when a person, on more than one occasion, follows or otherwise harasses another person without legal purpose with the intent to (1) place the person in reasonable fear of her safety or the safety of her loved ones or (2) "[c]ause that person to suffer substantial

emotional distress by placing [her] in fear of death, bodily injury, or continued harassment and that in fact causes that person substantial emotional distress." N.C. Gen. Stat. § 50C-1(6).

Harassment, as used in Section 50C-1(6), includes "[k]nowing conduct . . . directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose." N.C. Gen. Stat. § 14-277.3A(b)(2) (2025). Civil harassment is comprised of five elements: "(1) knowing conduct (2) directed at (3) a specific person (4) that torments, terrorizes or terrifies, and (5) serves no legitimate purpose." *Durham Cnty. Dep't of Soc. Servs. v. Wallace*, 295 N.C. App. 440, 445, 907 S.E.2d 1, 6 (2024). Additionally, it is required that the defendant's harassment was accompanied by the specific intent to either place the person in reasonable fear for his safety or the safety of those close to him or to cause the person to suffer substantial emotional distress. *St. John v. Brantley*, 217 N.C. App. 558, 562, 720 S.E.2d 754, 757 (2011); *see also Ramsey v. Harman*, 191 N.C. App. 146, 149, 661 S.E.2d 924, 926 (2008). Section 50C-1(6) does not define either "on more than one occasion" or "substantial emotional distress." N.C. Gen. Stat. § 50C-1(6). Since these terms have not been defined by the legislature, the terms should be given their plain meaning if it is reasonable to do so. *State v. Thompson*, 157 N.C. App. 638, 644–45, 580 S.E.2d 9, 13 (2003). By plain meaning, "more than one occasion" refers to at least two incidents of unlawful conduct. "'Substantial' is defined as 'considerable in [] value, degree, amount or extent[.]'" *Ramsey*, 191 N.C. App. at 150, 661 S.E.2d at

927 (citing *American Heritage Dictionary* 1727 (4th ed. 2000)). Emotional distress is defined as a "highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury) that results from another person's conduct." *Id.* (citing *Black's Law Dictionary* 563 (8th ed. 2004)).

## A. There is Competent Evidence to Support the Findings of Fact.

Competent evidence is "evidence that a reasonable mind might accept as adequate to support the finding." *Real Time Resols., Inc. v. Cole*, 293 N.C. App. 632, 635, 902 S.E.2d 269, 272 (2024) (citation omitted). "Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary." *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163 (2001) (citations omitted). In a non-jury trial, "where different reasonable inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial judge." *Sharp v. Sharp*, 116 N.C. App. 513, 530, 449 S.E.2d 39, 48 (1994) (citation omitted). "The trial judge has the authority to believe all, any, or none of the testimony." *Id.* We have emphasized that "the trial court was present to see and hear the inflections, tone, and temperament of the witnesses, and that we are forced to review a cold record." *Brandon v. Brandon*, 132 N.C. App. 646, 652, 513 S.E.2d 589, 594 (1999).

Defendant argues that the trial court's written findings were unsupported because they lacked specificity, frequency, or legitimate reasons such as invading private areas or tormenting Plaintiff. Moreover, Defendant contends that the

findings, specifically "May 6th 2025," are based on contradictory testimony and amount to a "back-and-forth" between the parties rather than a "one-sided 'hectoring.'" Defendant also argues that there are no specific allegations of harassment outside of 6 May 2025 and instead "vague reference[s] to having 'problems' with Defendant for thirty-five years," so the evidence is insufficient to support harassment "on more than one occasion." Finally, Defendant argues that Mr. Nelson's purported evidence of substantial emotional distress was "vague, conclusory, and insufficient."

The record evidence of the testimony of the parties and witnesses' conflicts on all the factual findings. While Defendant suggests the surveillance could be for reasons such as "documenting the [thirty-five-year-long] property line dispute" or "personal security," Plaintiff testified she erected a fence to prevent pictures after Defendant recorded a survey of the land around 2000. While Defendant asserts there were no provocations, Ms. Austin contends Defendant was within twelve feet of Plaintiff's face on 6 May 2025. Plaintiff claimed Defendant threw mulch over the fence at Plaintiff on 11 April 2024 and references another encounter "around 2000." Defendant contends there was a "back-and-forth" between the parties on 6 May 2025; Plaintiff contends she said nothing to Defendant, whereas Defendant asserts Plaintiff called her a "bitch."

The testimony lacks specificity. For example, regarding evidence of substantial emotional distress, Plaintiff testified she feared for her safety. Mr.

Nelson testified that Plaintiff experienced "sleepless nights." While he does not explicitly state a causal link to the source of the sleeplessness, he answered "sleepless nights" when asked what "kind of distress *it's* caused [his] wife." (Emphasis added). It is unclear exactly what "it's" refers to; the previous question, however, inquired about Defendant's conduct. Finally, neither Plaintiff nor her witnesses provided specific quotes of verbal harassment on other occasions.

The trial judge has the authority to believe any amount of the testimony, and contradictions or discrepancies are to be resolved by the trier of fact. *See Sharp*, 116 N.C. App. at 530, 449 S.E.2d at 48; *Smith v. Smith*, 89 N.C. App. 232, 235, 365 S.E.2d 688, 691 (1988) (holding that "[c]redibility, contradictions, and discrepancies in the evidence are matters to be resolved by the trier of fact . . . and the trier of fact may accept or reject the testimony of any witnesses"). So long as these findings are reasonably acceptable to support the finding, the evidence is competent and binding on appeal, even if there is evidence to the contrary. *See Sessler*, 144 N.C. App. at 628, 551 S.E.2d at 163. Plaintiff or her witnesses testified to evidence that could reasonably support each finding of fact. While the testimony could have been more descriptive, the trial court had the benefit of observing the parties and has the authority to determine which reasonable inferences shall be drawn from the evidence. *See Sharp*, 116 N.C. App. at 530, 449 S.E.2d at 48. Where possibly "vague" references exist, a reasonable mind may still consider the testimony to support harassment on more than one occasion with the intent to cause substantial emotional distress that

resulted in such distress. We hold there is competent evidence to support the trial court's findings of fact.

**B. The Evidence is Sufficient to Uphold the No-Contact Order.**

In all actions tried without a jury, "the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C. R. Civ. P. 52(a)(1) (2025). "A judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court." *Morris v. Se. Orthopedics Sports Med. & Shoulder Ctr.*, 199 N.C. App. 425, 433, 681 S.E.2d 840, 846 (2009) (citation omitted). "[T]his Court has not generally required written entered judgments to adhere to the prior non-entered, orally rendered judgments upon which they were based." *In re O.D.S.*, 247 N.C. App. 711, 718, 786 S.E.2d 410, 415 (2016). Comments during the trial court hearing as to consideration of the evidence and law are not controlling; the written court order as entered is controlling. *Fayetteville Publ'g Co. v. Advanced Internet Techs., Inc.*, 192 N.C. App. 419, 425, 665 S.E.2d 518, 522 (2008).

Defendant argues the trial court's oral findings did not align with the statutory requirement for a no-contact order and instead attempted to resolve a neighborly feud. Consistent with *Fayetteville*, however, the written court order as entered is controlling. *See id.* The trial court's written findings are those considered.

Defendant argues the trial court's written findings are still insufficient to support a 50(C) order. However, the finding of "hectoring [P]laintiff each time she

leaves her home resulting in sleepless nights" satisfies the statutory requirements for a 50C order. To "hector" means to "intimidate or dominate in a blustering way[;] [t]o behave like a bully; swagger." *Hector, American Heritage College Dictionary* (5th ed. 2022). The hectoring was directed toward Plaintiff. The trial court checked box 3(a) on the AOC-CV-524 form, which is sufficient evidence of specific intent. *See DiPrima*, 277 N.C. App at 444, 860 S.E.2d at 294 (recommending revision of relevant forms to include the Chapter 50C statutory requirements, including a defendant's specific intent to commit unlawful conduct, which have since been adopted). "Each time" indicates that the hectoring occurred on more than one occasion. Furthermore, being generally anxious or upset about conduct does not constitute substantial emotional distress. *Walker-Snyder v. Snyder*, 281 N.C. App. 715, 720, 870 S.E.2d 139, 143 (2022). Sleeplessness amounts to more. *See Norrell v. Keely*, 238 N.C. App. 441, 2014 WL 7494995, at *6 (2014)[1] (unpublished) (finding problems sleeping, eating, and concentrating were sufficient to establish substantial emotional distress); *cf. Tyll*, 229 N.C. App. at 162–63, 748 S.E.2d at 333 (holding that "annoying" threats to make statements about the plaintiff to various others did not constitute substantial emotional distress); *Ramsey*, 191 N.C. App. at 151, 661 S.E.2d at 927 (holding that the plaintiff's "self-serving testimony" that she felt "threatened"

---

[1] We recognize *Norrell* is unpublished and, thus, it is not binding precedent. Nevertheless, we find the reasoning persuasive. *See Coble v. Ballentine*, --- N.C. App. ---, ---, --- S.E.2d ---, ---, 2026 WL 1041273, at n.2 (N.C. Ct. App. April 15, 2026). *Norrell* discusses whether problems sleeping, eating, and concentrating are sufficient evidence of substantial emotional distress.

by messages and was "embarrassed" was not sufficient substantial emotional distress). The findings of fact do not provide a specific quantity of sleepless nights, but the use of the plural term "nights" indicates more than one. Because there is competent evidence to support the trial court's written findings, these findings support the legal entry of a Chapter 50(C) order.

The trial court's handwritten factual findings, as well as the completion of the rest of the AOC-CV-524 form, are sufficient as a matter of law to support the entry of a 50C no-contact order against Defendant.

AFFIRMED.

Judges CARPENTER and STADING concur.

Report per Rule 30(e).